UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| PATRICIA JORDAN and RICARDO JORDAN,<br><br>          Plaintiffs,<br><br>     v.<br><br>NOVASTAR MORTGAGE INC.; THE BANK OF NEW YORK MELLON CORPORATION, as Trustee; and JPMORGAN CHASE BANK, as Trustee,<br><br>          Defendants. | CIVIL ACTION<br><br>NO. 1:08-CV-3587-CAP |

**O R D E R**

This matter is currently before the court on the plaintiffs' motion for reconsideration, or, in the alternative, motion to vacate and certify questions to the Georgia Supreme Court [Doc. No. 52].

In the motion for reconsideration, the plaintiffs contend this court erred in its previous order [Doc. No. 51]. More specifically, they argue that the court erred by concluding (1) the Georgia legislature did not intend that the Georgia Residential Mortgage Act ("GRMA"), O.C.G.A. §§ 7-1-1000, et seq., provide a private right of action, and (2) the Fair Business Practices Act ("FBPA") (an by extension the plaintiffs' claim under the Unfair and Deceptive Practices Toward the Elderly Act ("UDPTEA")) does not apply to residential mortgage transactions, because the specific

conduct alleged in this case is, in fact, regulated. The court does not agree.

**I.  Whether the Georgia legislature intended for the Georgia Residential Mortgage Act ("GRMA"), O.C.G.A. §§ 7-1-1000, et seq., to provide a private right of action**

In the complaint, the plaintiffs contend that the defendants, in providing the plaintiffs with a mortgage loan in July 2004, violated O.C.G.A. § 7-1-1013 by willfully and intentionally breaching their duties of good faith and fair dealing, duties not to misrepresent or conceal material facts, factors, terms, or conditions of mortgage loans, and a duty not to make mortgage loans with the intent to foreclose [Doc. No. 1, Attach. 2, ¶¶ 55-56]. Then, in the motion for reconsideration, the plaintiffs cite O.C.G.A. §§ 7-1-1003.2(e) in support of their argument that the legislature intended to permit consumers to recover damages under the GRMA.[1]  However, in reviewing the plaintiffs' argument, the court notes (1) the plaintiffs cited the amended versions of the statutes, not those in effect in July 2004 when the defendants issued the mortgage loan, and (2) the plaintiffs concede that there is no Georgia decision holding that the GRMA can be privately enforced.

---

[1] The plaintiff's also cite to O.C.G.A. § 7-1-1007(a) in support of their argument. However, the court concludes that section of the GRMA merely contemplates notice requirements regarding any lawsuit filed against the licensee.

In July 2004, O.C.G.A. § 7-1-1003.2(e) stated "[a]ny person including the department who may be damaged by noncompliance of a licensee *with any condition of a bond* may proceed on such bond against the principal or surety thereon, or both, to recover damages." (emphasis added). Then, effective May 5, 2005, the Georgia legislature amended the section to read "[a]ny person including the department who may be damaged by noncompliance of a licensee with any condition of a bond *or this article, the 'Georgia Residential Mortgage Act,'* may proceed on such bond against the principal or surety thereon, or both, to recover damages." (emphasis added).

"Laws prescribe only for the future; they cannot impair the obligation of contracts nor, ordinarily, have a retrospective operation." O.C.G.A. § 1-3-5; Ga. Const., Art I, Sec, I, Para. X. In other words, "legislation which involves mere procedural or evidentiary changes may operate retrospectively; however, legislation which affects substantive rights may only operate prospectively." Fowler Properties, Inc., et al. v. Dowland, 646 S.E. 2d 197, 200 (Ga. 2007) (citing Enger v. Erwin, 267 S.E.2d 25 (Ga. 1980)). In July 2004, when the defendants issued the mortgage loan to the plaintiffs, the possibility that the defendants would be liable for noncompliance with the GRMA under O.C.G.A. § 7-1-1003.2(e) did not exist because such liability did not take effect

-3-

until May 5, 2005. By creating this new right of action, O.C.G.A. § 7-1-1003.2(e) operates as a substantive law, and it would be unconstitutional to retroactively apply this law to this case. Moreover, the amendment that changed O.C.G.A. § 7-1-1003.2(e) indicates to the court that the Georgia legislatures did not initially intend for the GRMA to provide a private right of action for violation of the act. Accordingly, the court concludes that the plaintiffs do not have a private right of action for noncompliance with the GRMA under O.C.G.A. § 7-1-1003.2(e). Furthermore, given that there is no Georgia decision holding that the GRMA can be privately enforced, the court will not permit the plaintiffs to create a private right of action through O.C.G.A. § 51-1-6.

**II. Whether the Fair Business Practices Act ("FBPA") applies to residential mortgage transactions**

In addition to contending that the GRMA provides a private right of action, the plaintiffs also challenge the court's conclusion that the FBPA does not apply to residential mortgage transactions, because the specific conduct alleged in this case is, in fact, regulated. In support of their argument, the plaintiffs rely upon Kitchen v. Ameriquest Mortgage Co., Case No. 1:04-CV-2750 (N.D. Ga. Apr. 29, 2005) and other persuasive authority from courts

in South Carolina and Tennessee. The court is unpersuaded by plaintiffs' argument.

The FBPA does not apply to "[a]ctions or transactions specifically authorized under laws administered by or rules and regulations promulgated by any regulatory agency of this state or the United States." O.C.G.A. § 10-1-396(1). Indeed, the legislature "intended that the Georgia FBPA have a restricted application only to the unregulated consumer marketplace and that the FBPA not apply in regulated areas of activity, because regulatory agencies provide protection or the ability to protect against the known evils in the area of the agency's expertise." Chancellor v. Gateway Lincoln-Mercury, Inc., 502 S.E.2d 799, 805 (Ga. Ct. App. 1998). Therefore, the FBPA does not apply in extensively regulated areas of the marketplace such as investment account transactions, finance charges and required disclosures by lenders, and insurance transactions. Taylor v. Bear Stearns & Co., 572 F.Supp. 667, 675 (N.D. Ga. 1983) (holding allegations of unauthorized trades or churning not cognizable under FBPA); Chancellor, 502 S.E.2d at 805 ("area of finance charges, disclosure, and truth in lending falls outside the FBPA, except where expressly covered"); Brogdon v . National Healthcare Corp., 103 F. Supp. 2d 1322, 1336 (N.D. Ga. 2000) (the GFBPA does not apply in extensively regulated areas of the marketplace such as

finance charges and required disclosures by lenders); Zinn v. GMAC Mortgage, Case No. 1:05-CV-1747, 2006 WL 418437, at *4 (N.D. Ga. Feb. 21, 2006) ("the GFBPA does not apply to plaintiff's transactions because the GFBPA does not apply to residential mortgage transactions").

### III. Motion to Vacate and Certify Questions to the Georgia Supreme Court

In the alternative, the plaintiffs move for the court to vacate and certify the questions presented to the Georgia Supreme Court. The Eleventh Circuit Court of Appeals explained that "[w]here there is any doubt as to the application of state law, a federal court should certify the question to the state supreme court to avoid making unnecessary Erie 'guesses' and to offer the state court the opportunity to interpret or change existing law." Mosher v. Speedstar Div. of AMCA International, Inc., 52 F.3d 913, 916-17 (11th Cir. 1995) (footnote omitted).

First, with regard to the question about the legislative intent to permit consumers to recover damages under the GRMA, the court concludes, as explained above in Section I., that there is no doubt that the legislature did not intend for a private right of action to exist for noncompliance with the GRMA under O.C.G.A. § 7-1-1003.2(e) prior to May 5, 2005. Second, regarding the plaintiffs' challenge to the court's conclusion that the FBPA does

not apply to residential mortgage transactions because the specific conduct alleged in this case is, in fact, regulated, the court concludes there is sufficient case law support its decision and declines to vacate and certify the question to the Georgia Supreme Court.

**IV. Conclusion**

For the reasons set forth above, the court hereby DENIES the plaintiffs' motion for reconsideration, or, in the alternative, motion to vacate and certify questions to the Georgia Supreme Court [Doc. No. 52].

SO ORDERED, this <u>18th</u> day of November, 2009.

<u>/s/ Charles A. Pannell, Jr.</u>
CHARLES A. PANNELL JR.
United States District Judge