IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| PATRICIA JORDAN and RICARDO JORDAN, | ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NOVASTAR MORTGAGE, INC., THE BANK OF NEW YORK MELLON CORPORATION, AS TRUSTEE, and JPMORGAN CHASE BANK, AS TRUSTEE, | ) ) ) ) ) | CIVIL ACTION NO. 1:08-CV-03587-CAP |
| | ) | |
| Defendants. | ) | |

FIRST AMENDED COMPLAINT

I. PRELIMINARY STATEMENT

1.  Defendant NovaStar Mortgage Inc. knowingly, intentionally, and willfully made a mortgage loan to the Plaintiffs, older and disabled homeowners on a low fixed income, with utter disregard for their ability to pay the loan and with the intent to foreclose.  Defendants The Bank of New York Mellon Corporation, as Trustee for NovaStar Mortgage Funding Trust, Series 2004-4 and JPMorgan Chase Bank, as former Trustee for NovaStar Mortgage Funding Trust, Series 2004-4, knowingly, intentionally, and willfully participated directly and/or indirectly in the

1

predatory and abusive mortgage practices perpetrated against the Plaintiffs in connection with the mortgage loan. This Complaint raises claims for fraud, negligent misrepresentation, and negligence.   Plaintiffs also assert claims for aiding and abetting and civil conspiracy, and seek a declaratory judgment of derivative liability.  Plaintiffs seek to recover actual, compensatory, general, and punitive damages, as well as court costs and litigation expenses.

## II. JURSIDICTION AND VENUE

2.  Jurisdiction is conferred on this Court by Article VI, Section I, Paragraph I of the 1983 Georgia Constitution, O.C.G.A. § 15-6-8, and O.C.G.A. § 9-10-91.

3.  Venue is proper pursuant to Article VI, Section II, Paragraph VI of the 1983 Georgia Constitution and by O.C.G.A. § 9-10-93.

## III.  PARTIES

4.  Plaintiffs Patricia Jordan and Ricardo Jordan ("the Jordans") are United States citizens who reside in Fulton County, Georgia.

5.  Defendant NovaStar Mortgage Inc. ("NovaStar") is a foreign corporation that regularly engages in the business of mortgage lending and has done substantial business in the state of Georgia.  NovaStar Mortgage Inc. may be served with

process by service upon its registered agent, CT Corporation, 1201 Peachtree

Street N.E., Atlanta, Fulton County, Georgia 30361.

6.   Defendant The Bank of New York Mellon Corporation, Trustee for

NovaStar Mortgage Funding Trust, Series 2004-4 ("Bank of New York") is a

foreign corporation.  Bank of New York does substantial business in the state of

Georgia.  Bank of New York is not registered with the Georgia Secretary of State

and does not have a registered agent in Georgia.  Under O.C.G. A. § 9-10-94, Bank

of New York may be served with process by service upon its registered agent, The

Corporation Trust Company, Corporation Trust Center 1209 Orange Street,

Wilmington, Delaware, 19801. Under O.C.G.A. §14-2-1510, Bank of New York

may be served by registered or certified or statutory overnight delivery, return

receipt requested, addressed to Robert P. Kelly, Chairman and Chief Executive

Officer, The Bank of New York Mellon, One Wall Street, New York, NY, 10286.

A copy of process shall also be served on the Secretary of State for the State of

Georgia.

7.   Defendant JPMorgan Chase Bank, former Trustee for NovaStar

Mortgage Funding Trust, Series 2004-4 ("Chase") is a foreign corporation.  Chase

has done substantial business in the state of Georgia. Chase may be served with

process by service upon its registered agent, CT Corporation, 1201 Peachtree

Street N.E., Atlanta, Fulton County, Georgia 30361.

IV.     <u>FACTUAL BACKGROUND</u>

8.  Plaintiff Patricia Jordan ("Mrs. Jordan") is a 66 year-old African-

American woman who purchased her home at 4062 Doster Drive, S.W., Atlanta,

Fulton County, Georgia, 30331 in 1983.  She has lived continuously in the home

for the past 26 years.

9.  Plaintiff Ricardo Jordan ("Mr. Jordan") is a 68 year-old African-

American veteran and at all times relevant to this action a disabled person,

suffering both mental and physical disabilities.

10.  Mr. and Mrs. Jordan are both record owners of their principal residence

located at 4062 Doster Drive, S.W., Atlanta, Fulton County, Georgia, 30331.

11.  The Jordans are financially unsophisticated.

12.  In 2004, Mrs. Jordan spoke to a representative of NovaStar about

refinancing her existing home mortgage loan.  Mrs. Jordan told NovaStar that she

and her husband were on a fixed income and that they wanted a fixed interest rate.

13.  NovaStar misrepresented to the Jordans that NovaStar would extend

them a fixed-rate loan.

14.  NovaStar provided the Jordans two Good Faith Estimates dated September 15, 2004 which reflects a fixed interest rate.

15.  However, on or about October 23, 2004, NovaStar made the Plaintiffs an adjustable rate mortgage loan.

16.  The loan is a 30-year adjustable rate mortgage (ARM) in the original principal amount of $123,975 with an initial interest rate of 10.450%.  The interest becomes adjustable after the first 24 months and may adjust every six months thereafter.  Under the terms of the loan, the interest rate can increase to a high of 17.45%, but can never adjust below the initial rate of 10.450%.

17.  Total settlement charges were $5,933.92, almost 5% of the loan amount.

18.  According to the HUD-1 settlement statement, loan proceeds went to pay off the previous mortgage in the amount of $97,360.05, unsecured debts in the amount of $11,065.31, and cash to the Jordans in the amount of $9,615.72.

19.  As part of the mortgage transaction, NovaStar acquired a security interest in residential real property owned by the Jordans and used as their principal dwelling.

20.  The Jordans did not know that this loan was an ARM until almost two years after the closing, when other lenders began sending solicitations offering to

re-finance their ARM. Shortly thereafter, NovaStar sent them notice of an interest rate increase.

21. The initial monthly principal and interest payment on the loan was $1,129.42. The total initial payment, including an escrow for property taxes and homeowners insurance, was $1,215.33. Pursuant to interest rate increases, the current monthly principal and interest payments have increased to $1,248.51. The total monthly payment including the escrow is now $1,384.51.

22. The Jordans provided NovaStar with accurate information and complete documentation of their income. They provided NovaStar with copies of their pension, annuity, and social security statements. These documents show that the Jordans' gross monthly income was $2,940, and that their net monthly income after deductions such as Medicare premiums was only $2,697.

23. The Defendants knew or should have known the amount, source, and fixed nature of the Jordans' income.

24. Despite having the correct information about the Jordans' income in its loan file, NovaStar falsified the Jordans' income on the loan application. The loan application wrongfully states the Jordans' combined income was $3,651 per month.

25.  The Jordans had no knowledge that the income on the loan application had been wrongfully inflated.

26.  As part of the underwriting process, NovaStar intentionally ignored and/or manufactured or falsely inflated the Jordans' actual income to make it appear that they had greater income than they truly possessed.

27.  The Defendants knew or should have known that, based on the Jordans' gross monthly income as documented in its loan file, the housing payment-to-income ratio at the time of the loan closing was more than 41% ($1,215.33 divided by $2,940).

28.  The Defendants knew or should have known that based on the Jordans' gross monthly income, housing payments, and other monthly debt payments as documented in its loan file, the debt-to–income ratio at the time of the loan closing was approximately 56% ($1,642 divided by $2,940).

29.  The Defendants knew or should have known that the above-described debt-to-income ratio exceeded the underwriting guidelines of the NovaStar Mortgage Funding Trust, Series 2004-4 which provided that the maximum debt-to-income ratio was 50%.

30.  The Defendants knew or should have known that the above-described housing payment-to-income and debt-to-income ratios exceed maximum ratios

recommended by the United States Department of Housing and Urban Development and the Government National Mortgage Association.  The Defendants knew or should have known that the Jordans could not afford the monthly payments on this mortgage loan.

31.  The Defendants knew or should have known that there was an obvious lack of probability of full payment of this mortgage loan by the Jordans.

32.  The Defendants knew or should have known that an ARM was not an appropriate loan product for the Jordans because they are elder and disabled homeowners on a low fixed income.

33.  NovaStar knowingly, willfully, and intentionally made this loan to the Jordans with utter disregard for the Jordans' ability to pay and with the intent to foreclose.

34.  NovaStar has made other similar mortgage loans without regard for the borrower's repayment ability.  On information and belief, the Defendants have foreclosed on a significant proportion of such mortgage loans.

35.  At all times relevant herein, the Defendants knew or should have known that the Jordans are elder persons.

36. NovaStar knowingly, willfully, and intentionally misrepresented to the Jordans that they were qualified for the mortgage; that they could afford the mortgage; and that it was extending them a fixed rate mortgage.

37. NovaStar knowingly, willfully, and intentionally concealed from the Jordans that they did not qualify for the mortgage loan; that it intentionally ignored and/or inflated their actual income to make it appear that they had greater income than they truly possessed; that it ignored and/or inflated their income in order to ensure apparent compliance with its underwriting guidelines; that its underwriting guidelines for debt-to-income ratios far exceed maximum payment ratios recommended by both the United States Department of Housing and Urban Development and the Government National Mortgage Association; that it made these mortgage loans with utter disregard for their ability to pay; and that it had extended to them an ARM.

38. In the course of this transaction, the Defendants did the following:

• increased the debt secured by the Jordans' home;

• increased their monthly principal and interest mortgage payments;

• increased the remaining term of their mortgage debt; converted debt that was completely unsecured to debt that encumbers their single most precious and critical asset, their home;

• made them a mortgage loan with a lack of substantial benefit to them; and

• placed the Jordans at greater risk of the loss of their home.

39.  The Jordans have struggled to stay current on the mortgage and are now in default.  They now face the threat of foreclosure and the loss of their home.

40.  According to the mortgage loan servicer, the Jordans' loan was pooled with other NovaStar mortgage loans and securitized in the NovaStar Mortgage Funding Trust, Series 2004-4 ("2004-4 Loan Pool").  The original Trustee for this pool was Chase.

41.  The securitization was memorialized in a Prospectus, a Mortgage Loan Purchase Agreement, a Pooling and Servicing Agreement ("PSA"), and a Prospectus Supplement ("PS") filed with the Securities and Exchange Commission, available at http://www.sec.gov/cgi-bin/browse-edgar?action=getcompany&CIK=0001308873&owner=exclude&count=40.

42.  The Prospectus for the 2004-4 Loan Pool, which described the characteristics of the loans in the pool and the nature of the securities, was dated April 16, 2004, more than six months before the closing of the Jordans' mortgage loan on October 23, 2004.  The Purchase Agreement and PSA for the pool were executed on November 1, 2004, and the Prospectus Supplement was dated

November 23, 2004.  Upon information and belief, the parties to the securitization, including Chase, the original Trustee, had committed to participate in the securitization deal well before the Jordans' loan was made.

43.  The Trustee performs vital and essential roles in creating and administering the 2004-4 Loan Pool.  NovaStar conveys and endorses its mortgage loans to the Trustee.  (Prospectus at 30; PS at S-63.)  The Trustee receives the mortgage loans and holds the assets in trust for the certificate holders.  (Prospectus at 30.)  The Trustee executes and delivers the securities.  (Prospectus at 29.)  The Trustee pays the certificateholders (PS at S-2.)  The Trustee may enforce remedies against NovaStar for breach of representations and warranties, may terminate the servicer, and may assume the duties of a servicer.  (PS at S-96, S-121.)  The Trustee receives compensation for performing these and other duties.  (PS at S-90.)  Furthermore, the Trustee forecloses on the loans in default.

44.  Prior to agreeing to act as Trustee in the 2004-4 Loan Pool, Chase had acted as Trustee in at least ten securitizations for which NovaStar was the primary originating lender, dating back as early as March 2002.

45.  Prior to the original sale and securitization of the Jordans' mortgage loan, the public record was replete with information regarding NovaStar's pattern of predatory and abusive mortgage lending practices. According to news reports

NovaStar's failure to document and verify borrower's ability to pay was publicly called into question as early as 2002, when the PMI Group, a leading provider of mortgage insurance, ceased to do business with NovaStar. NovaStar then sued PMI in federal court in 2003, and PMI countersued, claiming that NovaStar had misrepresented borrowers' stated incomes on loans. According to news reports, in 2003, ABN Amro Group, a large mortgage lender, sued NovaStar alleging fraud, breach of contract, and negligence involving straw borrowers and falsified appraisals. According to news reports, in 2003, Aurora Loan Services, a unit of Lehman Brothers, ceased its business relationship with NovaStar, citing red flags such as falsified employment information and overstated property values in over half of the NovaStar mortgages it reviewed.

46. The Prospectus Supplement for the 2004-4 Loan Pool states that the loans in the pool are comprised of "Stated Income," "No Documentation," "Limited Documentation," "No Income/No Asset," "24-Month Bank Statement," and "Full Documentation" loans. The Prospectus Supplement explains that Limited Documentation loans do not require verification of income, but do require bank statements to evidence cash flow; that Stated Income loans are underwritten based on "monthly income as stated in the loan application;" and that for No Documentation loans, "an applicant provides no information as it relates to their

income." The Prospectus Supplement further states that "[o]n a case-by-case basis, exceptions to the underwriting guidelines are made where the seller believes compensating factors exist."

47. The Prospectus Supplement for the pool states that there were a total of 10,213 loans in the pool of which 43.08% were Stated Income, 6.68% were No Documentation, and 2.41% were Limited Documentation.

48. Upon information and belief, but for the Purchase Commitments that NovaStar entered into with Chase, and the cash flow generated by serial securitizations involving Chase, NovaStar would not have been able to generate a high volume of subprime mortgage loans, including the Jordans' loan.

49. Bank of New York became the successor Trustee for the 2004-4 Loan Pool through an amendment to the PSA on or about October 31, 2007. This change was due to an agreement between Bank of New York and Chase that Bank of New York would acquire much of Chase's corporate trust business.

50. Chase and Bank of New York knew or should have known that numerous loans in the pool were made without documenting or verifying the borrowers' income or ability to pay.

51. Chase and Bank of New York knew or should have known that public records and news reports alleged that NovaStar had made mortgage loans in which

it had falsified borrowers' income and/or failed to document or verify the borrowers' income or ability to pay.

52. Subsequent to the original sale and securitization of the Jordans' mortgage loan, but prior to Bank of New York becoming the Trustee for the pool, further information became available regarding the high delinquency and default rates in the loan pool.

53. Bank of New York knew or should have known of the high default rates for NovaStar's mortgage loans in the pool and of NovaStar's predatory and abusive mortgage lending practices prior to becoming the Trustee for the pool.

54. In conjunction with the sale and securitization of the Jordans' mortgage loan, Chase knew or should have known that NovaStar had made this loan in utter disregard for the Jordans' ability to pay and with the intent to foreclose.

55. In conjunction with becoming the Trustee for the pool, Bank of New York knew or should have known that NovaStar had made this loan in utter disregard for the Jordans' ability to pay and with the intent to foreclose.

56. Both Bank of New York and Chase knew or should have known of NovaStar's predatory and abusive mortgage lending practices, both generally and specifically with respect to the Jordans' mortgage loan, and are therefore directly

and/or derivatively liable for legal claims arising out of the Jordans' loan transaction.

## V.  COUNT ONE: FRAUD

57.  The Jordans incorporate by reference paragraphs 1 through 56 above, as if set forth verbatim herein.

58.  As described above (specifically as set forth in Paragraphs 8 though 56, including but not limited to Paragraphs 36 and 37), NovaStar misrepresented to and concealed from the Jordans material facts in connection with the mortgage loan.

59.  NovaStar knew that the representations were false at the time it made them.

60.  NovaStar made the misrepresentations and concealed material facts with the intention and purpose of deceiving the Jordans.

61.  The Jordans reasonably relied on the misrepresentations and concealment of material facts.  The Jordans could not have discovered most of the misrepresentations and concealments by reading the documents they were given. The Jordans had no reason to suspect wrongdoing by NovaStar, which appeared to be a trustworthy, professional company.  NovaStar knew that the Jordans were financially unsophisticated and were relying on NovaStar's greater expertise.

62.  The Jordans have been harmed as a proximate result of the misrepresentations and concealment and are entitled to actual, compensatory, general, and punitive damages.

63.  The above-described conduct authorizes the imposition of punitive damages, pursuant to O.C.G.A. § 51-12-5.1, in that it shows willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of a conscious indifference to consequences, and the Jordans seek such damages from the Defendants.

64.  Bank of New York and Chase are subject to direct and/or derivative liability for the actual, compensatory, general, and punitive damages.

VI.  COUNT TWO:  NEGLIGENT MISREPRESENTATION

65.  The Jordans incorporate by reference paragraphs 1 through 64 above, as if set forth verbatim herein.

66.  As described above (specifically as set forth in Paragraphs 8 though 56, including but not limited to Paragraphs 36 and 37), NovaStar made material misrepresentations to and concealed material facts from the Jordans in connection with the mortgage loan.

67.  The Jordans reasonably relied on the misrepresentations and concealment of material facts.  The Jordans could not have discovered most of the

misrepresentations and concealments by reading the documents they were given. The Jordans had no reason to suspect wrongdoing by NovaStar, which appeared to be a trustworthy, professional company. NovaStar knew that the Jordans were financially unsophisticated and were relying on NovaStar's greater expertise.

68. The Jordans have been harmed by this misrepresentation and are entitled to actual, compensatory, general, and punitive damages.

69. The above conduct authorizes the imposition of punitive damages, pursuant to O.C.G.A. §51-12-5.1, in that it shows willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of a conscious indifference to consequences, and the Jordans seek such damages.

70. Bank of New York and Chase are subject to direct and/or derivative liability for actual, compensatory, general, and punitive damages.

VII.  COUNT THREE: NEGLIGENCE

71. The Jordans incorporate by reference Paragraphs 1 through 70 as if said paragraphs were set forth fully herein.

72. NovaStar had a duty to disclose and not to conceal material facts in connection with the mortgage loan.

73. NovaStar had a duty to record accurately information about the Jordans' income and not to manufacture or falsely inflate their income so as to make it appear that they had greater income than they truly possessed.

74. As described above, NovaStar has negligently breached its duties.

75. The Jordans relied on NovaStar's misrepresentations and concealment of material facts.

76. The negligence of NovaStar is the sole and proximate cause of the loss to the Jordans.

77. The Jordans are entitled to recover actual, compensatory, general, and punitive damages.

78. The above-described conduct authorizes the imposition of punitive damages, pursuant to O.C.G.A. § 51-12-5.1, in that it shows willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of a conscious indifference to consequences, and the Jordans seek such damages.

79. Bank of New York and Chase are subject to direct and/or derivative liability for these actual, compensatory, general, and punitive damages.

VIII.  COUNT FOUR:  AIDING AND ABETTING
AGAINST CHASE AND BANK OF NEW YORK

80. The Jordans incorporate by reference Paragraphs 1 through79 as if said paragraphs were set forth fully herein.

81. Chase's participation in the securitization as Trustee ordinarily and naturally produced NovaStar's conduct complained of herein, for NovaStar would not have made loans like that extended to the Jordans, in disregard of standard, professional, and responsible underwriting practices, if not for the Purchase Commitment with Chase as Trustee and the cash flow provided by the serial securitization agreements. Chase entered into a contract with NovaStar that enabled NovaStar to commit the wrongful acts complained of herein.

82. Chase and Bank of New York knew of the wrongful practices committed by NovaStar, and provided substantial assistance in these actions (as described specifically in paragraphs 40-56).

83. Chase and Bank of New York provided this substantial assistance with knowledge of the Jordans' rights and for the indirect purpose of injuring the Jordans, or for the purpose of benefiting themselves at the Jordans' expense.

84. Chase and Bank of New York received financial benefit from their involvement in the securitization of the Jordans' loan, and attempted to insulate themselves from liability through the design of the securitization.

85.  Chase and Bank of New York aided and abetted NovaStar's fraud, negligent misrepresentation, and negligence.

86.  Chase and Bank of New York maliciously procured NovaStar's fraud, negligent misrepresentation, and negligence.

87.  The Jordans have been harmed by Chase and Bank of New York's conduct, and are entitled to recover actual, compensatory, general, and punitive damages.

88.  The above-described conduct authorizes the imposition of punitive damages, pursuant to O.C.G.A. §51-12-5.1, in that it shows willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of a conscious indifference to consequences, and the Jordans seek such damages.

IX.  COUNT FIVE:  CIVIL CONSPIRACY
AGAINST CHASE AND BANK OF NEW YORK

89.  The Jordans incorporate by reference Paragraphs 1 through 88 as if said paragraphs were set forth fully herein.

90.  On information and belief, Chase, NovaStar, and the other parties to the securitization of the 2004-4 Loan Pool came to a mutual understanding that they would accomplish an unlawful design.  Chase knew of NovaStar's predatory and

unlawful lending practices, both generally and specifically with regard to the Jordans' loan, and agreed that these actions should be taken by committing to participate in this NovaStar securitization as Trustee before, during, and after the making of the Jordans' loan.

91.  Chase and NovaStar engaged in a civil conspiracy to commit fraud.

92.  Bank of New York joined the conspiracy after it was formed, when Bank of New York agreed to act as successor Trustee, knowing what it knew about the 2004-4 Loan Pool and the Jordans' loan in particular.

93.  The Jordans have been harmed by Chase and Bank of New York's conduct, and are entitled to recover actual, compensatory, general, and punitive damages.

94.  The above-described conduct authorizes the imposition of punitive damages, pursuant to O.C.G.A. §51-12-5.1, in that it shows willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of a conscious indifference to consequences, and the Jordans seek such damages.

X. COUNT SIX:  DECLARATORY JUDGMENT OF DERIVATIVE LIABILITY AGAINST CHASE AND BANK OF NEW YORK

95.  The Jordans incorporate by reference Paragraphs 1 through 94 as if said paragraphs were set forth fully herein.

21

96.  Chase and Bank of New York knew of the unlawful conduct of NovaStar at the time they became holders of the subject mortgage loan.

97.  Chase and Bank of New York had notice of the defenses to the mortgage loan at the time they became holders of the loan.

98.  Chase and Bank of New York are derivatively liable for NovaStar's fraud, negligent misrepresentation, and negligence.

99.  The Jordans have been harmed by the aforementioned conduct, and are entitled to actual, compensatory, general, and punitive damages, as a set-off by way of recoupment against the outstanding obligation.

100.  The Jordans' damages exceed the amount of the obligation, therefore they are entitled to a declaratory judgment against Chase and Bank of New York that the note is void and unenforceable.

## PRAYER FOR RELIEF

Wherefore, the Jordans respectfully pray this Court as follows:

(1) award the Jordans the following amounts for their claims for fraud: actual, compensatory, general, and punitive damages in an amount to be determined at trial;

22

(2) award the Jordans the following amounts for their claims for negligent misrepresentation: actual, compensatory, general, and punitive damages in an amount to be determined at trial;

(3) award the Jordans the following amounts for their claims for negligence: actual, compensatory, general, and punitive damages in an amount to be determined at trial;

(4) award the Jordans the following amounts for their claims for aiding and abetting against Chase and Bank of New York:  actual, compensatory, general, and punitive damages in an amount to be determined at trial;

(5) award the Jordans the following amounts for their claims for conspiracy against Chase and Bank of New York:  actual, compensatory, general, and punitive damages in an amount to be determined at trial;

(6) enter a declaratory judgment that the note is unenforceable by Chase and Bank of New York to the extent of the damages awarded, because the legal claims asserted herein act as defenses to the enforcement of the obligation, and the damages owed to the Jordans may be set off against the amount of the debt, rendering it unenforceable to the extent of the offset damages;

(7) enter a judgment in favor of the Jordans awarding court costs and

   litigation expenses;

(8) for a trial by jury as provided by law;

(9) award such other and further relief as the Court deems just and proper.

TRIAL BY JURY DEMANDED

This 1st day of December, 2009.

> /s/ Sarah E. Bolling
> Sarah E. Bolling
> Georgia Bar No. 319930
> ATLANTA LEGAL AID SOCIETY, INC.
> 246 Sycamore Street, Suite 120
> Decatur, GA 30030
> Phone: (404) 377-0701
> Fax: (404) 377-4602
> E-mail: sebolling@atlantalegalaId.org
>
> Stephen M. Krumm
> Georgia Bar No. 429922
> Jennifer C. Staack
> Georgia Bar No. 101037
> ATLANTA LEGAL AID SOCIETY, INC.
> 151 Spring Street, NW
> Atlanta, GA  30303
> Phone: (404) 614-3910
> Fax: (404) 525-5710
> Email: smkrumm@atlantalegalaid.org
> Email: jcstaack@atlantalegalaid.org
> Counsel for Plaintiffs